UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ANTHONY ROSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 4:25-cv-124 |
| | ) |
| SWITZERLAND COUNTY, INDIANA, | ) |
| | ) |
| AND | ) |
| | ) |
| SWITZERLAND COUNTY COMMISSIONERS (in their official capacity), | ) ) ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  Nature of the Case**

Comes now the Plaintiff, Anthony Rose ("Plaintiff"), by undersigned counsel, and hereby files this lawsuit against the Defendants, Switzerland County and Switzerland County Commissioners ("Defendants") under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**II.  PARTIES**

1. At all relevant times, Plaintiff resided within the Southern District of Indiana.

2. Defendants, Switzerland County is a political subdivision and municipal corporation that operates and conducts business in the Southern District of Indiana.

3. Defendant, Switzerland County Commissioners, govern Switzerland County pursuant to Indiana Code § 36-2-22 and are responsible for the establishment, operation, and maintaining of the emergency medical services per IC § 10-31-5-1(1).

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12117.

5. Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4)(ADA).

6. The Defendants are an "employer" as defined by the ADA, 42 U.S.C. § 2111(5).

7. At all times relevant to this action, Plaintiff was associated with a close and coworker who was a "qualified individual" with a "disability" as those terms are defined by the ADA, 42 U.S.C. §§ 12111(8) and 12102(1), respectively.

8. Plaintiff satisfied his obligations to exhaust hus administrative remedies, having timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue notice to Plaintiff. he now timely files her lawsuit.

9. All the events, transactions, and occurrences pertinent to this lawsuit occurred within the geographical environs of the Southern District of Indiana and all parties are located therein. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### IV. FACTUAL ALLEGATIONS

10. Plaintiff is associated with a close friend and coworker with a qualified individual with one or more disabilities, has a record of a disability, and/or is regarded as disabled by the Defendant.

11. The Plaintiff is a qualified individual with a disability, record of disability, and or is perceived as having disability.

12. Plaintiff made Defendants aware of her disabilities.

13. Defendants hired Plaintiff as a paramedic to work in May of 2017.

14. Plaintiff was a public employee as a firefighter and a volunteer EMT of Switzerland county.

15. Glenn Scott, coworker, with Nadine Swift, Medical Director, present stated to Lustig "Let's make a sign that says you're not emotionally available".

16. On or about October 15, 2022, Ms. Swift asked Plaintiff if she was emotionally stable. Plaintiff was told by Defendants that if she could not handle it that she needed to get out.

17. The next day Plaintiff responded to a 20-month-old baby whose head was crushed. Plaintiff asked for help from Ms. Swift due to the trauma she experienced during the run and requested Ms. Swift obtain a Critical incident Stress Debriefing ("CISD") team. Defendants never obtained the CISD for Lustig. Ms. Swift offered to have a discussion with her and other responders but did not provide a CISD proscribed by Indiana Code § 36-8-2.5, et seq. Ms. Swift was not a trained and certified CISD services provider pursuant to I.C. § 36-8-2.5-1(6) and could not provide confidentiality of their communications per I.C. § 36-8-2.5-2. The Lustig rejected Ms. Swift's offer and again requested a CISD, but none was provided.

18. The Lustig then went on FMLA leave from October 25, 2022 to January 20, 2023 for Occupational Stress Disorder due to responding to an emergency run in which the baby's head was crushed.

19. At nearly the same time, hospice was at the Lustig's house caring for her 16-year-old daughter from September 20, 2022 to December 22, 2022. Lustig's daughter passed away on December 29, 2022.

20. Plaintiff worked on the reports from home during her FMLA leave October 25, 2022 to January 20, 2023 and was not paid the minimum wage required by the FLSA.

21. Plaintiff complained about working while on FMLA leave from home to Ms. Swift.

22. Plaintiff's complaints constitute statutorily protected conduct under FLSA, FMLA, and ADA.

23. Plaintiff returned to work in late January of 2023 sporadically when she was allowed to work and put on the schedule by Ms. Swift.

24. After returning to work in late January of 2023, Lustig and Ms. Swift had multiple conversations about Lustig being "mentally stable".

25. Also, when Lustig returned to work, she went on an emergency run with Ms. Swift. A pregnant mother was incapacitated, and Ms. Swift told Lustig that the baby was dead and not to work on the baby as it would slow the run waiting on a helicopter. The Lustig checked under the mother and saw an umbilical cord and told Ms. Swift the baby was trying to breathe. Lustig covered the baby with dressings and cut the umbilical cord and resuscitated the baby successfully. Once again due to the trauma of this run, the Lustig requested a CISD, but again it was not provided to her.

26. At all relevant times, Plaintiff's work performance met Defendants' legitimate expectations.

27. On March 12, 2023, Lustig was on a cell phone call with Anthony Rose, coworker/paramedic. Lustig was inquiring if Mr. Rose was still planning on taking her son and his son that evening to Lazer Craze because it was both of their son's birthday. Mr. Rose had answered Ms. Lustig's call approximately the same time as a EMS/fire tone came over his radio

requesting a response to an emergency and he dropped his phone on the grass while getting equipment to use on victims. Lustig also dropped her phone because she was at home, and she quickly needed to catch her 18-month-old who was precariously on top of a table. Lustig picked up her phone and heard Mr. Rose telling a bystander at the scene to pick up his phone before it gets stepped on. Lustig closed her phone thinking the call was disconnected. Later, Lustig picked up the phone to make another call and Lustig could hear a third paramedic asking Mr. Rose about the victim's lung sounds. There was never any name or identifying information about the patient spoken. No audio or video recording was made of the phone call.

28. Defendants drafted a letter to Lustig and Rose dated on or around March 17, 2023 that she never received placing her on suspension or administrative leave and asking her to come in for a meeting on March 20th or 21st, 2023.

29. On March 20, 2023, Mr. Rose received a text message from Defendant to report for a meeting on March 21, 2023 at 5:30 p.m. However, Lustig never received a call, text, or letter unlike Mr. Rose.

30. On March 29th, 2023, Defendant drafted a letter that requested Lustig to go to the TEC building on April 5, 2023, at 1300 hours. The letter stated that an internal review of the events of the evening of March 12, 2023 was being conducted and alleged the Lustig made a recording of the emergency run that Mr. Rose responded to on March 12, 2023 in violation of HIPAA laws. Lustig did not receive the letter until after the April 5th, 2023 meeting. However, Lustig went to the meeting because she received a text to her telephone by Defendants just hours before the meeting.

31. The March 29th, 2023 letter to the Lustig contained no notice of hearing, no appeal rights, and no notice of her rights to be represented or have legal counsel present.

32. Mr. Jim Corbin, who was selected by Dr. Coots, Switzerland County Medical Director, and/or Nadine Swift, Switzerland County Emergency Management Services Director, to conduct the investigation, was at the meeting. Mr. Corbin asked Lustig to take a lie detector test. Lustig agreed to take the lie detector test, but none was ever performed. Lustig offered her phone to Mr. Corbin to show that a recording by video or audio was never taken on March 12th, 2023, and was told it was not necessary. Lustig told Mr. Corbin that she was at home with her two-year-old son on March 12th, 2023 and that she did not violate HIPAA laws.

33. Mr. Corbin was a friend of Ms. Swift's and had no background or experience in investigations or administering lie detector tests. Mr. Corbin was a certified paramedic only and was not a licensed physician and therefore, is not an independent medical expert as required by Indiana Code § 36-8-3.5-19.3. A female friend from Ms. Swifts' church was chosen and present to be a witness during the interviews of Mr. Rose and the Lustig and also did not qualify as an independent medical expert pursuant to IC § 36-8-3.5-19.3.

34. Plaintiff and Lustig was on suspension greater than five (5) days prior to being terminated.

35. Lustig did not receive a salary while on suspension and the Commission did not make a determination as to whether the Lustig was to continue to receive her wages as required by IC § 36-8-3.5-17.

36. In violation of IC § 36-8-3.5-19.3, Dr. Coots, failed to provide Lustig or Rose with a written explanation of the following:

    a. Refusal or failure to supervise or otherwise provide medical control and direction to Plaintiff;

      b. Refusal or failure to attest to the competency of the Plaintiff to perform emergency medical services; and

      c. Suspension of Plaintiff from performing emergency medical services.

37. Defendant terminated Plaintiff in a letter signed by all the Switzerland County Commissioners dated May 15, 2023 and received by the Plaintiff on May 17th, 2023. The letter requested Plaintiff return the EMS communication radio by May 22, 2023. The letter contained no notice that Plaintiff had a right to request a hearing or any other appeal rights available to the Plaintiff.

38. Plaintiff was a certified employee entitled to a hearing and appeal concerning the medical director's action pursuant to IC § 36-8-3.5-19.3.

39. A decision to discipline a member (Plaintiff) may be made only if the preponderance of the evidence presented at the hearing indicates such a course of action. IC § 36-8-3.5-17(h). Therefore, the Plaintiff is not an employee at will.

40. Defendant deprived Plaintiff of his due process of a protected liberty or property interest in her employment.

41. Defendant deprived Plaintiff of her Emergency Medical Certification resulting in substantial and procedural due process deprivation of her rights.

42. At all times relevant, Plaintiff was a certified employee" who, as a condition of employment, holds a valid certification issued under IC § 16-31-3 by the Indiana emergency medical services commission established by IC § 16-31-2-1.

43. At all relevant times, Dr. Coots was the medical director for the Defendants pursuant to IC § 16-31.5-2-9.

44. The Defendants took employment action against Plaintiff without providing her with notice of her rights for a hearing and appeal regarding Dr. Coots actions in violation of IC § 36-8-3.5-19.3.

45. Plaintiff was denied notice and meaningful opportunity to be heard before she was deprived of her substantive and procedural due process rights.

46. Defendants have taken adverse employment actions against Plaintiff because of his association with Lustig's and her disability, her record of disability, and/or perceived disability.

47. Defendants regarded Lustig as having a disability, perceived her as having a disability, and/or because of her statutorily protected activity took adverse employment actions against Plaintiff.

48. The Plaintiff has suffered damages, including significant emotional distress, because of Defendants' unlawful conduct.

49. Plaintiff's similarly situated coworkers who have not engaged in protected activity and/or that were not perceived to have a disability, did not have a qualified disability, or did not engage in protected activity were treated more favorably than Plaintiff.

50. Plaintiff's and Lustig's request for CISD constitutes a request for reasonable accommodation under the ADA and is protected activity under the ADA.

51. Defendants suspended and terminated Plaintiff in retaliation for his association with Lustig and her exercising her rights under the ADA.

52. Any proffered reason by the Defendant for Plaintiff's termination is pretextual.

53. Defendant has taken adverse employment actions against CP because of his association with Ms. Lustig.

54. Ms. Lustig filed an EEOC charge against R on August 11, 2023 charging the R with violations of the ADA.

55. On September 11, 2023, CP reapplied to be reinstated or rehired by the R and was denied by R on September 14, 2023. Emily Miller employed by the Respondent emailed CP and stated that he was not eligible for rehire or as a volunteer for the R.

56. CP would not have been placed on administrative leave, terminated, or deemed ineligible for rehire as an employee or volunteer if it was not for his association with Ms. Lustig.

57. CP was deemed ineligible for rehire as an employee or volunteer in retaliation for his close association with Ms. Lustig and her exercising her rights under the ADA.

58. The Defendants' actions have violated Plaintiff's rights as protected by the ADA and he has suffered damages as a result of these unlawful actions.

## V. CAUSES OF ACTION

### COUNT I
### ADA - RETALIATION

59. Plaintiff hereby incorporates paragraphs 1-58 of his Complaint.

60. Defendant took adverse employment actions against Plaintiff based on his engaging in protected activity.

61. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights protected by the ADA.

62. Plaintiff has suffered harm as a result of Defendant's unlawful actions.

### COUNT IX – 14th Amendment
### DUE PROCESS

63. Plaintiff hereby incorporates paragraphs 1-61 of his Complaint.

64. Defendant deprived Plaintiff of her property interest in his employment without due process.

65. Defendant did not provide Plaintiff with her procedural due process rights by suspending him and terminating her without: prior notice, notice of rights to a hearing, notice of appeal rights, right to have representation, right to a written explanation of reasons for actions taken, and her right to present evidence.

66. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights under the 14th Amendment.

## COUNT X – 14th Amendment
## SUBSTANTIAL DUE PROCESS

67. Plaintiff hereby incorporates paragraphs 1-66 of his Complaint.

68. Defendant deprived Plaintiff of liberty by taking actions without due process that resulted in the loss or eventual loss of her paramedic certification.

69. Defendant did not provide Plaintiff with his procedural due process rights by suspending his and terminating him without: prior notice, notice of rights to a hearing, notice of appeal rights, right to have representation, right to a written explanation of reasons for actions taken, and her right to present evidence.

70. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights under the 14th Amendment.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Anthony Rose respectfully requests that this Court find for her and order that:

1. Defendant reinstate Plaintiff to the same position, salary, and seniority, or

        front pay and benefits to her in lieu of reinstatement;

2. Defendant pay lost wages and benefits to Plaintiff;

3. Defendant pay compensatory and punitive damages to Plaintiff;

4. Defendant pay liquidated damages to Plaintiff;

4. Defendant pay pre- and post-judgment interest to Plaintiff;

5. Defendant pay Plaintiff's costs and attorneys' fees incurred in litigating this action; and

6. Any and all other legal and/or equitable damages that this Court determines just and proper to grant.

                          Respectfully submitted,

                          */s/ Julie C. Alexander*
                          Julie C. Alexander (25278-49)
                          John H. Haskin (7576-49)
                          JOHN H. HASKIN & ASSOCIATES
                          255 North Alabama Street, 2nd Floor
                          Indianapolis, Indiana 46204
                          Telephone: (317) 955-9500
                          Facsimile: (317) 955-2570
                          Email: jhaskin@jhaskinlaw.com
                          Email: jalexander@jhaskinlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, Anthony Rose, respectfully requests a jury trial for all issues deemed triable.

                          Respectfully submitted,

                          */s/ Julie C. Alexander*
                          Julie C. Alexander (25278-49)
                          John H. Haskin (7576-49)
                          JOHN H. HASKIN & ASSOCIATES
                          255 North Alabama Street, 2nd Floor
                          Indianapolis, Indiana 46204
                          Telephone: (317) 955-9500

Facsimile: (317) 955-2570
Email: jhaskin@jhaskinlaw.com
Email: jalexander@jhaskinlaw.com